UNITED STATES, Appellee

v.

ROBERT PARKER, JR., Private E–2, U. S. Army, Appellant

3 USCMA 541, 13 CMR 97

542

No. 2449

Decided December 18, 1953

LT COL James C. Hamilton, U. S. Army and CAPT William C. Irby, Jr., U. S. Army, for Appellant.

LT COL Thayer Chapman, U S. Army, LT COL William R. Ward, U. S. Army, MAJ Irvin M. Kent, U. S. Army, and 1ST LT Richard L. Aronstein, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

On September 16, 1952, the accused, Parker, and four other men—two Americans and two Koreans—were stationed at a combat outpost some distance to the fore of the main line of resistance in a certain Korean area. They had been ordered to remain at this post unless specifically instructed to withdraw. Upon attack by the enemy, the accused abandoned his weapon, left his fighting position, and returned to the main line of resistance, leaving one American soldier dead and the other seriously wounded. The two Koreans also left their station. Subsequently, the accused was charged with a violation of Article 99, Uniform Code of Military Justice, 50 USC § 693, as described more fully hereafter, and convicted thereof by general court-martial. The conviction was approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General, United States Army. Upon petition by the accused, this Court granted further review to consider the matters dealt with in succeeding portions of this opinion.

II

The specification lodged against the accused alleges that he, "on or about 2210 hours, 16 September 1952, in the presence of the enemy, was guilty of *cowardly conduct,* in that he *ran away* from his combat outpost." (Emphasis supplied). In his instructions to the court-martial regarding the elements of the offense charged, the law officer advised as follows:

"The court is advised that the elements of the offense are as follows:

"1. That, at the time and place alleged, the accused committed the act of cowardice alleged; and

"2. That this act occurred while the accused was in the presence of the enemy.

"With respect to the legal meaning of the phrases 'in the presence of the enemy' and 'act of cowardice,' I invite the attention of the court to paragraphs 178a and 178e respectively, Manual for Courts-Martial, a copy of which is before each member of the court.

"I further advise the court that the term 'running away' does not mean the accused actually ran from the enemy, but that he was in the presence of the enemy and departed from his place of duty without authority or justification."

544

It is readily apparent that no instruction was given to the effect that, to convict the accused, the court-martial must find that the conduct alleged was motivated by *fear*. Defense counsel now argues, and quite soundly, that as to a charge of "cowardly conduct," in violation of Article 99(5), supra, such an instruction is required, and failure on the part of the law officer to furnish it *sua sponte* constitutes prejudicial error. United States v. Soukup, 2 USCMA 141, 7 CMR 17. But was the accused here charged with this offense? His appellate counsel, of course, argue that this was the charge faced by their client. Government counsel before us, on the other hand, urge that the accused was not charged with that offense at all, but rather with "running away," as proscribed by Article 99(1) of the Code. If the position of the Government ▆▆▆ ▆ ernment is sound, the failure of the law officer to instruct concerning the necessity for a finding of fear was not error—for the reason that fear is not an element of the offense of running away. Manual for Courts-Martial, United States, 1951, paragraph 178*a*; United States v. Sperland, 1 USCMA 661, 5 CMR 89. The question then, very simply, is whether the accused was charged with cowardly conduct in violation of Article 99(5), with running away in violation of Article 99(1), or perhaps with both.

### III

We see no reason whatever why the specification with which we are dealing may not be said to charge at least one offense in violation of Article 99—and we so hold. The Article provides that "Any member of the armed forces who before or in the presence of the enemy . . . is guilty of cowardly conduct . . . shall be punished by death or such other punishment as a court-martial may direct." No attempt is made therein, or elsewhere in the Uniform Code, to define the term, "cowardly conduct." However, paragraph 178*e* of the Manual, supra, seeks to perform this function. It states, under the heading of "Cowardly Conduct," that "Cowardice is *misbehavior* through *fear*," and thereafter proceeds to elaborate the conception of fear embodied in military law. (Emphasis supplied.)

Running away before, or ▆▆▆ ▆ in the presence of, the enemy is certainly *misbehavior* within the meaning of Article 99, for that very portion of the Uniform Code is entitled "Misbehavior before the enemy"—and running away is the sole offense denounced in subdivision (1) thereof. Thus, we conclude that the specification with which we are here concerned may be construed to allege an instance of cowardly conduct. There can be no doubt that this was the understanding of the law officer at the trial. This is made plain through a comparison of his statement of the elements of the offense charged —quoted earlier herein—with those of cowardly conduct, as set out in paragraph 178*e* of the Manual, supra. It is also to be observed that he made specific reference to the mentioned paragraph.

Nevertheless, does it follow that the specification before us cannot be construed to allege a different offense? As has been suggested, Article 99 also provides that "any member of the armed forces who before or in the presence of the enemy . . . runs away . . . shall be punished by death or such other punishment as a court-martial may direct." As in the case of cowardly conduct, no attempt is made in the Uniform Code to define this crime, and the current Manual for Courts-Martial is as silent on the subject. However, the meaning of the phrase, "running away," was considered by this Court in United States v. Sperland, supra, and there we said at page 664:

". . . The term must connote some form of fleeing from an ensuing or impending battle. It seems unrealistic to assume that every unauthorized absence from any unit which might be considered in the presence of the enemy constituted misbehavior. On the other hand it appears that to limit the phrase to flight from fear or cowardice is too restricted. It would appear to be more in keeping with the offense, if an intent to avoid combat, with its attending hazards and dangers is con-

sidered as an essential part of running away . . ."

In addition, the term's content is the subject of discussion in Winthrop, Military Law and Precedents, 2d ed., 1920 Reprint, page 624. There the learned author, quoting from earlier writers on military law, says:

". . . 'But here it is to be noticed that of *fleeing* there be two sorts; the one proceeding of a sudden and unlooked for terror, which is least blameable; the other is voluntary, and, as it were, a determinate intention to give place unto the enemie—a fault exceeding foule and not excusable.' "

Thus it appears that "running away," as used in Article 99, requires an intention to avoid certain actual or impending combat, and must take place in the presence of the enemy. Consequently, it is to be distinguished *as a matter of law* from both mere absence without leave and desertion. It further appears that it may be of two sorts: one produced by a spasmodic fear reaction, the other the product of reasoning and plan. It has already been observed that it is possible properly to read the specification with which we are dealing here, as alleging an instance of cowardly conduct in running away. However, is it not equally defensible to read the specification's language to charge running away, with surplus phrasing alleging that the accused's flight resulted from "a sudden and unlooked for terror"? We are quite sure that it is.

To put the matter in another fashion, running away—as such and regardless of cause—constitutes a violation of the Article under scrutiny. We have seen that the commission of this offense may be prompted by fear—but conceivably it may be the product of some motivation other than this. If the former, the crime is within the purview of either Article 99 (1) or 99 (5); if the latter, it can only be charged as a violation of Article 99 (1). Certainly the fact that the same act may be charged as a naked running away is no basis

for sound argument that it may not— if the pleader desires, and the facts permit—be regarded as cowardly conduct and charged as such. The evidence is overwhelming in the case at bar that the misbehavior of the accused was the result of sheer terror, no less. Thus, the pleader might have elected to specify cowardly conduct, in violation of 99 (5)—and perhaps he did. But he was not compelled to do so. Instead, he might choose the 99 (1) offense, and —in terms of minimum practice standards—either might or might not make reference to the motivating force. And perhaps he did this—either instead or as well.

## IV

Gifted with more than one plausible construction of the specification in suit, we discern no possible injustice to the accused in adopting the one which may enable us to affirm some portion of the court-martial's findings of guilt. Cf. Fippin v. United States, 162 F2d 128 (CA9th Cir) (1947). Under such an approach, we would be permitted to resolve against the accused any uncertainty in the pleading, to which he offered no objection at the trial, and may interpret the specification as charging the accused only with running away. The allegations concerning cowardice would then constitute mere surplusage, requiring no instructions from the law officer. Cf. Ex Parte Lane, 135 US 443, 34 L. ed. 219, 10 S. Ct. 760 (1890); United States v. Brewer, ACM S-1768, 1 CMR 872.

## V

However, although the specification be interpreted to have charged the accused with cowardly conduct, we conclude that it had the additional effect of charging him with running away. It is true that, as a general thing, military practice permits the allegation of only one offense within the terms of a single specification—just as in civilian practice an indictment is allowed normally to allege no more than one offense within the language of a single count. Manual for Courts-Martial, United

States, 1951, par. 28*b*; Rule 8*a*, Federal Rules of Criminal Procedure. Nevertheless, any proscription ██ against duplicity in a pleading does not apply to an "offense necessarily included in the offense charged," as to which the accused may be convicted, although acquitted of the principal offense. See Article 79, Uniform Code of Military Justice, 50 USC § 673. A few courts conceive that in order that one offense may be "necessarily included" within another, the former must constitute a part of the abstract definition of the latter—this without regard to allegations in particular cases. State v. Roberts, 213 La 559, 35 So2d 216 (1948). Under such a view, running away in the present case would not be "necessarily included in the offense charged," if that offense be construed to be cowardly conduct—for the reason that circumstances are easily conceivable in which cowardly conduct could exist apart from running away. We prefer, however, to determine ██ mine the question of inclusion of offenses in terms of the allegations of the specific case. See United States v. Davis, 2 USCMA 505, 10 CMR 3. Accordingly, if proof of the offense charged in the specification requires the establishment of every element of another crime, and if every element of that further offense is alleged, we conclude that the second crime is "necessarily included," and that the accused may be convicted of that offense, although acquitted of the principal one charged. Cf. Dunn v. State, 50 Ariz 473, 73 P2d 107 (1937); People v. Zielinski, 247 App Div 573, 288 NY Supp 176 (4th Dept. 1936); U. S. ex rel Valenti v. Karmuth, 1 F Supp 370 (NDNY) (1932). Running away would thus be "nec- ██ essarily included" within any charge of cowardly conduct contemplated in the case before us now. This is true for the reason that to show cowardly conduct would require proof of the allegation of running away—an allegation which is in no sense surplusage, and which suffices to allege a violation of Article 99(1). See State v. Anderton, 69 Utah 53, 252

Pac 280 (1926). Therefore, the court-martial was free to interpret the specification to allege running away and to find the accused guilty of that offense.

## VI

Apart from any relationship of inclusion, cowardly conduct and running away were parts of a single ██ transaction in the case before us. Colonel Winthrop asserts that the rule against double pleading "does not apply to the stating together, in the same count, of several distinct criminal acts, provided the same all form parts of the same transaction; and substantially complete a single occasion of offense. Thus it has been held that assault and battery and false imprisonment, when committed together or in immediate sequence, may be laid in the same count without duplicity, since 'collectively they constitute but one offense.'" Winthrop, supra, sec. 206, p 143. Accord: State v. Dale, 218 NC 625, 12 SE2d 556 (1940); Commonwealth v. Sutton, 171 Pa Super 105, 90 A2d 264 (1952). Many jurisdictions permit burglary and a consummated larceny to be alleged in the same indictment count, where they arise out of the same transaction—and the jury may convict as to either offense. See, e.g., People v. Butler, 268 Mich 408, 256 NW 465 (1934); People v. Keene, 391 Ill 305, 63 NE2d 509 (1945), cert denied, 327 US 801, 90 L ed 1026, 66 S Ct 900 (1940); State v. McClung, 35 W Va 280, 13 SE 654 (1891); Zediker v State, 114 Neb 292, 207 NW 168 (1926). Nor does the Federal practice seem different. See United States v. Martini, 42 F Supp 502, 510 (SD Ala) (1941); United States v. Martinez-Gonzalez, 89 F Supp 62, 65 (SD Cal) (1950); Munsson v McClaughry, 198 Fed 72, 75 (CA8th Cir) (1912). In light of these decisions it is in no wise improper for us to conclude that, although the specification in the case at bar be deemed to allege cowardly conduct, it also served to charge the offense of running away. Thus the court-martial was free to find the accused guilty of this crime, regardless of its determination as to cowardice.

The accused may object to these

views on the ground that we are sanctioning misleading and duplicitous pleading through our interpretation of the specification in the case at bar. Our reply must be that such objection to the pleading—assuming arguendo its validity—must be taken at the trial or else be deemed the subject of waiver. Durland v. United States, 161 US 306, 40 L ed 709, 16 S Ct 508 (1896); United States v. Brewer, supra; United States v. Branford, CM 349258, 2 CMR 489; Manual for Courts-Martial, supra, Pars 67a, b. In the event of such waiver, a finding of guilt may be sustained as to any offense alleged in the specification and supported by proper instructions and sufficient evidence, absent a showing of injury to the substantial rights of the accused. United States v. Barnawell, ACM S-2958, 5 CMR 773; State v. Anderton, supra. Compare Connors v. United States, 158 US 408, 39 L ed 1033, 15 S Ct 951; State v. Hamill, 127 Mo App 661, 106 SW 1103.

Conceding the presence of adequate instructions, we could detect no such injury to the accused here through affirmance of so much of the findings as finds the accused guilty of the offense of running away. He was fully informed of the allegations against which he had to defend, and he did defend on the ground that he had not, in fact, "run away," but had only departed from his outpost to report to his superiors. The evidence fully supports findings of guilty of this offense. The findings returned by the court-martial included, of logical necessity, a determination that the accused did, in fact, run away from his combat outpost under the conditions demanded by Article 99(1), supra. Both the crime of running away and that of cowardly conduct derive from the same Article of the Code, are both aspects of misbehavior before the enemy, and are each subject to the same maximum punishment. Indeed, had the charge sheet contained two specifications, one alleging running away, the other cowardly conduct through running away, it might have been thought that the prosecution was multiplying

**548**

unreasonably the charges against the accused. Manual for Courts-Martial, supra, par 26b.

## VII

It has been assumed in the preceding paragraph that the instructions of the law officer here were adequate to cover the offense of running away. It is now necessary that we consider their propriety in this particular. Did any instruction furnished the court-martial include the elements of this crime? We think not. In United States v. Sperland, supra, Judge Latimer, the organ of the Court, was explicit in suggesting that, "It seems unrealistic to assume that every unauthorized absence from any unit which might be considered in the presence of the enemy constituted misbehavior." The opinion of the Court in that case also stated that, "It would appear to be more in keeping with the offense, if an intent to avoid combat . . . is considered as an *essential part* of running away." (Emphasis supplied.) This position is wholly consistent with the language of Colonel Winthrop, set out in a preceding paragraph of this opinion. It seems completely clear, therefore, that just as fear is an essential ingredient of the offense of cowardly conduct, so is a certain sort of intent a basic element of the crime of running away. That no instructional mention was made of this component will be discerned readily by reference to the law officer's instructional language set out in an earlier division hereof. It follows that the court was not instructed on the elements of running away any more than it was charged on those of cowardly conduct. Affirmance of guilt of either offense is, therefore, impossible.

Does it follow, however, that a rehearing must be ordered? We are certain that it does not. That affirmance by us of the offense of absence without leave is entirely proper is made clear by our action in United States v. Baguex, 2 USCMA 306, 8 CMR 106. See also Uniform Code, Article 59(b). Indeed, the instant case is an infinitely stronger one for an in-

vocation of the mentioned Article than was Baguex. This is true for the plain reason that here the law officer's instructions included absence without leave, whereas in Baguex we were willing to affirm guilt of a lesser included offense in the face of instructional failure as to it.

It has been argued, however, that we are not required to descend in the scale to mere absence without leave, but under Baguex may properly affirm as to running away—this upon the theory that we have held earlier herein that the crime of running away is included within the cowardly conduct charged in this case. We could doubtless accept this argument were it not for the fact that running away cannot be said to be the *lowest* offense of which the accused may be deemed guilty under the law and the facts. As we understand our holding in Baguex, we may purge an instructional failure as to a lesser included offense *only* by affirmance of the lowest offense of the genre involved of which the accused may be said to be guilty.

It must be admitted that it is unlikely—in view of the character of the evidence reflected in the record—that, if properly instructed, the court-martial would have been willing to find the accused guilty of mere absence without leave, rather than of running away. However, we cannot make that determination for its members. Certainly they would not have acted arbitrarily and in violation of their oaths had they elected the lesser offense. It must be obvious that we find here a situation quite different from the one obtaining in this respect in the Baguex case. There the lesser offenses of involuntary manslaughter and negligent homicide — crimes located in the homicide line below voluntary manslaughter, the offense affirmed—were compact of a wholly different theory of criminal responsibility not reasonably raised by the evidence. Running away and absence without leave, however, are distinctly of the same general pattern, and the lesser was not excluded as a rational possibility by the evidence in this case.

It follows therefore that—conceiving

of the specification in this case to allege either the crime of running away or that of cowardly conduct—we are unable to purge the error flowing from a failure to instruct on running away by an affirmance of guilt of running away—that is, by affirmance of guilt of any offense greater than absence without leave. Accordingly, we affirm so much of the findings of guilty as finds the accused guilty of absence without leave while in the presence of the enemy, in violation of Article 86(3). In view of this modification of the findings, it is at least conceivable that the board of review may wish to consider reassessment of sentence. Therefore, the case is remanded for this purpose. Chief Judge QUINN concurs in the result.

LATIMER, Judge (concurring in the result):

I concur in the result.

A study of this record convinces me that we need be concerned with considering only the offense of misbehavior before the enemy arising out of cowardly conduct which is proscribed by subsection (5) of Article 99, Uniform Code of Military Justice. The specification was intended to charge the accused with having committed that particular form of the offense, as the language of the specification follows precisely that carried in the form specification for cowardly conduct. The theory of the Government was that the accused misbehaved because of fear; the evidence tended to show he was actuated by that mental condition; and the instructions were copied from the "proof" of cowardly conduct found in Paragraph 178 (e) of the Manual for Courts-Martial, United States, 1951, which is concerned with that arm of the crime. Therefore, it is difficult for me to ascertain why any other method of committing the offense should be given any consideration.

Apparently the principal opinion is based on the theory that subsection (1) of the Article should be considered as a predicate for affirming the conviction. Based on the record and the manner in which we dispose of the case, I believe it is entirely unnecessary to

**549**

consider that question. It matters not which method of committing the greater offense be used as a base, as the instructions are inadequate to support a finding under either mode. In United States v. Sperland, 1 USCMA 661, 5 CMR 89, decided September 3, 1952, we held that an intent to avoid combat is an ingredient of the offense defined under subsection (1). A theory to support a conviction under that subsection was not contemplated by the parties and there is no mention in the instruction of all elements of that particular type of the offense. In United States v. Soukup, 2 USCMA 141, 7 CMR 17, decided January 23, 1953, we held that when the government seeks to sustain a finding under subsection (5), the instructions must include a requirement that the court-martial find the conduct was motivated by fear. Measured by the rule announced in that case, the instructions are not sufficiently complete to uphold a finding based on that theory.

In view of the fact that the instructions will not support a finding of an offense under either subsection of Article 99, any discussion concerning the gradations of severity of the two crimes, be one greater or lesser than, or equal to the other, is of no materiality. We are merely faced with a situation which makes it impossible to affirm a finding of misbehavior before the enemy under any theory. As held by Judge Brosman, the most that can be affirmed under the instructions given in this case is the lesser included offense of absence without leave. In that connection the law officer instructed as follows:

"1. That, at the time and place alleged, the accused committed that act of cowardice [ran away] alleged; and

"2. That this act occurred while the accused was in the presence of the enemy.

With respect to the legal meaning of the phrases 'in the presence of the enemy' and 'act of cowardice,' I invite the attention of the court to paragraphs 178a and 178e respectively, Manual for Courts-Martial, a copy of which is before each member of the court.

I further advise the court that the term 'running away' does not mean the accused actually ran from the enemy, but that he was in the presence of the enemy and departed from his place of duty without authority or justification."

When those instructions are interpreted as a whole, I find the law officer merely instructed that if the court-martial members were to find the accused was in the presence of the enemy and left his place of duty without authority, they could return a finding of guilty. The members, having considered the elements set out by the law officer, necessarily passed only upon the sufficiency of the evidence to establish, beyond a reasonable doubt, each mentioned element. Accordingly, their finding could sustain an offense no greater than an unauthorized absence. For a more detailed explanation of my views on why we should affirm that included offense, see my dissent in United States v. Gibson, 3 USCMA 512, 13 CMR 68.