UNITED STATES, Appellee

v.

ERWIN A. HALLETT, Sergeant First Class,
U. S. Army, Appellant

4 USCMA 378, 15 CMR 378

MAJ Edwin Doran, U. S. Army, and 1ST LT Richard B. Dempsey, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on the accused's petition for review. A general court-martial tried him for misbehavior before the enemy, in violation of the Uniform Code of Military Justice, Article 99, 50 USC § 693, under a specification alleging that "before the enemy, [he] was guilty of cowardly conduct in that he wrongfully failed to accompany his platoon on a combat ambush patrol, as it was his duty to do." In expressing its findings of guilt, the court-martial deleted the words charging cowardly conduct, and—pursuant to instructions from the law officer—found the accused not guilty of having violated Article 99, but guilty of an infraction of Article 134 of the Code, supra, 50 USC § 728. These findings have been affirmed by reviewing authorities—and the approved sentence now imposes a dishonorable discharge and total forfeitures, together with confinement at hard labor for three years. This Court has granted the accused's petition to determine whether the findings of guilty under Article 134 are correct, and whether the approved sentence is legal.

II

In light of the issues before us, a detailed discussion of the evidence is not required. Suffice it to say that it showed convincingly that the accused elected not to accompany his platoon on the ambush patrol in question. However—and especially in light of his previous fine combat record—it left unsupported the allegation that he was motivated by cowardice. Recognizing this circumstance, the members of the court-martial inquired of the law officer in open court whether they might lawfully find the accused guilty not of cowardly conduct, as proscribed by Article 99 (5), but guilty rather of a willful failure to do his utmost to encounter enemy troops, as denounced by Article 99 (8). The law officer responded in the negative. In addition, he advised the court that the only lesser included offense available to it rested on Article 134—and simply took the form of a wrongful failure to accompany the platoon on its ambush patrol.

It has been urged that this Court should adopt the suggestion tendered by the members of the court-martial, and should conclude that their proposed finding met the requirements of Article 99 (8). Certainly the evidence left no doubt that the accused's failure to accompany his platoon on its combat mission derived from a conscious determination on his part, and not from mere neglect or heedlessness. We have indicated on several occasions that we are not bound by the view of either the accuser or the court-martial concerning the Article of the Code which has been violated. United States v. Deller, 3 USCMA 409, 12 CMR 165; United States v. O'Neill, 3 USCMA 416, 12 CMR 172; United States v. Johnson, 3 USCMA 174, 11 CMR 174.

On the other hand, we doubt the propriety of substituting on appeal a "theory of the case" which —without objection from either trial counsel or defense—the law officer had explicitly

removed from consideration by the members of the court. Moreover, we note that the specification fails to allege willfulness, and that the law officer did not advert to any such element in defining the offense with which we are now concerned. Indeed, there are circumstances under which the term "wrongfully," when used as here in a specification, will be deemed to embrace willful conduct. See United States v. McElroy, 3 USCMA 606, 14 CMR 24 (concurring opinion). However, if that effect were given the specification now before us, we would be required to conclude that its terms operated to allege both cowardly conduct and a willful failure to do one's utmost to encounter the enemy—two distinct types of misbehavior. Cf. United States v. Parker, 3 USCMA 541, 13 CMR 97; United States v. Frazier [CM 352905], 4 CMR 320.

At any rate, we are not disposed to conclude that—whatever its scope as found here — the term ■ "wrongfully," as used in the law officer's instructions, sufficed to inform the court of the element of willfulness required for conviction under Article 99(8). Accordingly, we conclude that, because of the failure to instruct fully on the elements of an offense under Article 99 (8), this Court is precluded from treating the court-martial's finding as amounting to a conviction of the accused of this particular variety of misbehavior.

### III

Article of War 75, 10 USC § 1547, penalized the conduct of one who "before the enemy, misbehaves ■ himself." The Judge Advocate General of the Army —serving at the time of the preparation of the Uniform Code— urged the draftsmen to add a similar general provision to the language of Article 99 for the purpose of denouncing the conduct of one who "misbehaves himself" before the enemy. He emphasized that the term "misbehaves":

". . . has long been construed as making culpable under the article any conduct by an officer or a soldier not conformable to the standard of behaviors [sic] before the enemy set by the custom of our arms. It has been used to punish flagrant misconduct before the enemy not specifically denounced elsewhere in the same article. In view of its long-established construction I recommend its retention in the code." [Hearings before the Senate Committee on Armed Services, 81st Congress, 1st Session, on S. 857 and H.R. 4080, page 275.]

It is clear that Congress rejected this suggestion to incorporate within Article 99 of the Code the generic provision of Article of War 75. Doubtless the legislators believed that they had defined specifically all conduct which would have been punishable under Article of War 75, and therefore that it was unnecessary to make use of an omnibus term of the nature of "misbehaves." See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 261.

Now that a case has been presented where—despite its broad coverage— Article 99 is inapplicable, and yet where the offense might previously have been punished under Article of War 75, the Government proposes that we rectify the omission by finding appropriate an invocation of Article 134. The argument continues to the effect that the offense under Article 134 is so clearly analogous to misbehavior before the enemy, in violation of Article 99, that it merits the same punishment. The only defect—from the standpoint of Government counsel—would seem to be that Article 134, unlike Article 99, does not authorize the death penalty, with the result that the punishment assessable for the claimed violation of the former provision is limited to confinement at hard labor for life, together with the usual accessories. At least one board of review has accepted the position that, within the present context, Article 134 is applicable. United States v. Barnett, 3 CMR 248. And this view is supported by the frequent willingness of boards of review under the Articles of War to discover lesser offenses included under specifications alleging misbehavior be-

fore the enemy. United States v. Coldiron, 6 BR(ETO) 239.

However, we are sure that the Government's position flies in the face of repeated holdings of this Court to the effect that Article 134 was not intended by Congress to apply in areas otherwise the subject of specific attention in Articles of the Uniform Code. Concerning an offense common to both military and civilian law, we have held, for example, that Congress intended Article 121 of the Code, supra, 50 USC § 715, to preempt the field of misappropriation of another's property, with the result that courts-martial are not free under Article 134 to convict an accused of any "wrongful taking," which fails to fall within the terms of Article 121. United States v. Norris, 2 USCMA 236, 8 CMR 36. Similarly, as to a purely military offense, we have pointed out that new varieties of desertion may not be derived from Article 134. United States v. Deller, supra; United States v. O'Neill, supra. In addition, we have emphasized that Congress meant to deal in Articles 85, 86 and 87 of the Code, supra, 50 USC §§ 679, 680, 681, respectively, with all instances in which any member of the Armed Forces is, through his own fault, not at the proper place at the required time. Consequently, we have refused to permit an offense sounding in unauthorized absence to be made the subject of punishment under Article 134. United States v. Johnson, supra. Now we must add that in Article 99 Congress proposed to cover the entire range of offenses which are assimilable to misbehavior before the enemy. No room is left in this area for the application of Article 134. Accordingly, conduct which does not fall within Article 99 may not be punished through an invocation of Article 134.

Scrutinizing the finding under the specification in the case at bar, one observes immediately that it is distinguished from simple unauthorized absence almost solely by the words "before the enemy." These words are the very hallmark of the offenses dealt with in Article 99. However, since in the instant finding of guilt these words have not sufficed to demonstrate a violation of Article 99, they must, under our approach, be disregarded. It remains to consider the possibility of guilt of unauthorized absence in violation of Article 86.

IV

No novel action is involved in treating the present finding as amounting to one that the accused had violated Article 86(3) of the Code. Certainly in instances where the accused was charged with running away from his unit—another form of misbehavior—there has been no hesitation in regarding unauthorized absence as a lesser included offense. United States v. Parker, supra; United States v. Frazier, supra; United States v. Lanzo-Velez [CM 360544], 11 CMR 529; United States v. Boyles [CM 361047], 10 CMR 213. Defense counsel complain that the instructions to the court-martial do not suffice for the offense of unauthorized absence, since there was no express advice to the effect that the failure to accompany the platoon on its combat mission must have been "without proper authority." While, as previously stated, the word "wrongfully," as used in the instructions here, does not pinpoint willfulness as an element of the offense, we are sure that it does serve fully to inform court members that a want of authority must be shown and found. Indeed, it is difficult to conceive— within the present framework—how conduct could be wrongful if authorized by competent authority. It is noted, of course, that there was no defense contention at the trial that the accused's failure to accompany the combat patrol had been authorized. We conclude that, in reaching their finding of guilt, the members of the court-martial must have understood from the instructions that such a finding might lawfully be returned only if they found on the accused's part an unauthorized failure to accompany his platoon on its ambush patrol. Since he failed to accompany his unit, it is obvious that he was absent from it.

V

The President suspended limitations

on punishment for violations of Article 86(3) occurring during the course of Korean hostilities. Therefore, the maximum punishment to which the accused was subject aggregated dishonorable discharge, total forfeitures, and confinement at hard labor for life. The law officer instructed the court-martial correctly as to this maximum punishment—although both he and the court believed at the time that the punishment derived from Article 134, and not from Article 86. Reviewing authorities in their consideration of sentence appropriateness proceeded on the basis of the same erroneous premise.

It is hard to see how this misconception concerning the statutory source of punishment can have acted to the accused's prejudice in either sentence or appellate review. However, to avoid any slightest possibility of injustice, we shall remand to the board of review which considered the case for any reassessment of sentence its members may feel appropriate in light of the action of this Court. Accordingly, the court-martial's finding is affirmed as a violation of Article 86(3), and the record of trial is returned to the board of review.

Chief Judge QUINN and Judge LATIMER concur.