# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Chad J. BLAIR,
### Storekeeper Third Class (E-4), U.S. Coast Guard

## CGCMG 0229

## Docket No. 1278

## 13 November 2008

General Court-Martial convened by Commander, First Coast Guard District. Tried at Boston, Massachusetts, on 18-19 December 2006.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Christopher L. Jones, USCGR |
| Assistant Trial Counsel: | LT Lisa M. LaPerle, USCGR |
| Civilian Defense Counsel: | William E. Enright, Jr., Esquire |
| Individual Military Counsel: | LTJG Allen E. Linken, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCGR |
| | LCDR Necia L. Chambliss, USCGR |
| Appellate Government Counsel: | LT Ronald B. Seely, USCG |
| | LCDR Brian K. Koshulsky, USCG |
| | CDR Stephen P. McCleary, USCG |

## BEFORE
## McCLELLAND, KANTOR & McGUIRE
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of three specifications of violating a lawful general order, in violation of Article 92, Uniform Code of Military Justice (UCMJ); nine specifications of making a false official statement, in violation of Article 107, UCMJ; one specification of neglectful damage to military property, in violation of Article 108, UCMJ; and the following in violation of Article 134, UCMJ: one specification of wrongfully recruiting for, soliciting membership in, and promoting activities of the Ku Klux Klan while publicly displaying an affiliation with the Armed Services; one specification of

violating Massachusetts General Laws, Chapter 269 § 10(m) and 18 U.S.C. § 13 by wrongfully possessing a large capacity firearm; one specification of violating Massachusetts General Laws, Chapter 269 § 10(h) and 18 U.S.C. § 13 by wrongfully possessing seven dangerous weapons; one specification of violating 26 U.S.C. §§ 5845(a), 5861(d), and 5871 by unlawfully knowingly receiving and possessing a firearm that is a destructive device (an explosive bomb); one specification of being drunk and disorderly; three specifications of wrongfully endeavoring to impede an investigation; and one specification of willfully and unlawfully altering a public record. The military judge sentenced Appellant to a bad-conduct discharge, confinement for one year, and reduction to E-3. The sentence was unaffected by the pretrial agreement, and the Convening Authority approved it as adjudged.

Before this Court, Appellant has assigned the following six errors:

I. Appellant's plea of guilty to violation of a lawful general order by accessing web sites containing "hate speech" is improvident because the specification fails to state an offense. The regulation is not punitive with respect to hate speech since the regulatory scheme specifically limits action taken against a member for hate speech to administrative rather than punitive action; this Court cannot affirm the lesser included offense of dereliction of duty because there was no constitutionally required notice of criminality for "inappropriate" as opposed to "prohibited" use under the regulatory scheme.

II. Appellant's plea to violation of a lawful general order by accessing web sites containing "hate speech" is improvident because the military judge failed to elicit facts sufficient to show that the content of the website stormfront.org constituted "hate speech" within the meaning of the regulation.

III. The military judge failed to elicit facts sufficient to show that Appellant recruited for the Ku Klux Klan "while publicly displaying an affiliation with the Armed Services" and failed to resolve inconsistencies brought out in sentencing evidence that tended to show Appellant was not "publicly displaying an affiliation with the Armed Services" at the time he posted flyers recruiting for the KKK.

IV. Appellant's plea to endeavoring to impede an investigation by shipping weapons to his father is improvident because evidence adduced at sentencing – that Appellant was ordered by the executive officer of USCGC TAHOMA to ship the weapons to his father – is inconsistent with a plea of guilty, and the military judge failed to resolve the inconsistency.

V.        Appellant is entitled to a new promulgating order that accurately reflects the findings after the military judge ruled some specifications "multiplicious with each other." Also, other specifications that the military judge found to be "multiplicious for the purpose of sentencing" actually constituted an unreasonable multiplication of charges and should be dismissed.

VI.       The promulgating order does not comply with R.C.M. 1114(c)(1) because it inaccurately reflects the pleas and findings.

With respect to the fourth issue, we find no substantial conflict with Appellant's guilty plea. *See United States v. Logan*, 22 USCMA 349, 351, 47 C.M.R. 1, 3 (1973). Concerning the fifth issue, we find no unreasonable multiplication of charges, but we will direct correction of the promulgating order to reflect the military judge's findings of multiplicity.[1] Likewise concerning the sixth issue, we will direct correction of the promulgating order as to pleas and findings. We discuss the other issues and affirm.

### Accessing web sites

Relevant to the first two assignments of error, Appellant was charged with violating a lawful general order by wrongfully engaging in personal use of a Coast Guard computer while required to be performing assigned Coast Guard duties. The basis for the specification was his use of a Coast Guard computer to access the web site http://www.StormFront.org.

We reject both assignments of error. Accessing a web site for personal use during work time, which Appellant admitted, is a violation of the punitive regulation irrespective of the content of the web site.

To reach this conclusion, we take official notice not only of COMDTINST M5370.8B, Standards of Ethical Conduct, the regulation cited in Charge II, Specification 1, but also of COMDTINST 5375.1B, Limited Personal Use of Government Office Equipment, to which Appellant refers.

---

[1] The military judge's findings of multiplicity of false official statement specifications is unexceptionable. The finding that neglectful damage to military property is multiplicious with being drunk and disorderly is more questionable, other than for sentencing purposes, but as the Government has conceded it, we will not discuss it.

The provision cited in the specification, paragraph 2.H.3.a. of COMDTINST M5370.8B, accurately summarizes the actual punitive regulation as follows: "You have a duty to protect and conserve Government property and you shall not use such property, or allow its use, for other than authorized purposes."[2]

COMDTINST 5375.1B sets forth its purpose in its first paragraph: "This instruction refines the policy on personal use of government office equipment by all Coast Guard (CG) personnel in accordance with [COMDTINST M5370.8B] and [DHS MD Number 4600.1, the Department of Homeland Security directive on personal use of government office equipment]. The use of government office equipment for official purposes is authorized and is not addressed by this Instruction."

The relevant provision of COMDTINST 5375.1B is paragraph 7.c., which reads, "Personal use of government office equipment is authorized for CG personnel *only during non-work time*," when such use meets certain conditions (emphasis added).  Later provisions specify "prohibited uses" that are prohibited at all times including non-work time, and "inappropriate uses" that may result in adverse administrative actions.

Appellant makes much of the distinction between prohibited uses and inappropriate uses, calling attention to the fact that he had used the computer to access a "hate site," and trafficking in hate speech is included under inappropriate uses.  However, Appellant stipulated that "on or about March 7, 2006, *while [he] was required to perform assigned Coast Guard duties*, [he] used a Coast Guard computer to access the Website http://www.StormFront.org," (emphasis added), and that use "was for the purpose of wrongful personal use and not part of [his] assigned Coast Guard duties."  (Prosecution Ex. 1.)  During the providence inquiry, he renewed his agreement with these terms of the stipulation (R. at 39-40), and further agreed that he was not performing his Coast Guard duties during the fifteen to thirty minutes he was on the web site.  (R. at 41.)

---

[2] The actual punitive regulation reads: "Standard.  An employee has a duty to protect and conserve Government property and shall not use such property, or allow its use, for other than authorized purposes."  5 CFR 2635.704(a), rendered in bold italics in Enclosure (1) to COMDTINST M5370.8B.  The cover document to COMDTINST M5370.8B, which is signed by the Commandant of the Coast Guard, contains this statement at paragraph 7: "The prohibitions and requirements of 5 CFR Part 2635 that are printed in bold italics in enclosure (1) are general orders

Thus, Appellant admitted that he accessed the site during work time.[3]  This takes the use out of the authorization provided by paragraph 7.c. of COMDTINST 5375.1B.  The discussion concerning hate speech during the providence inquiry is a red herring, as are Appellant's arguments before this Court about hate speech.

### Recruiting for Ku Klux Klan

Relevant to the third assignment of error, Appellant was charged with recruiting for the Ku Klux Klan[4] while publicly displaying an affiliation with the Armed Services, such conduct being of a nature to bring discredit to the Armed Forces.

Pursuant to an order from an officer, Appellant drove a government vehicle to the local airport to attend group counseling.  He brought with him Ku Klux Klan recruiting flyers, one of which he affixed to the mirror in the airport men's restroom.  He was wearing civilian clothes, but the coordinators and participants of the group counseling session knew that he was a member of the Coast Guard.  He could have been seen posting the flyer if anyone had walked into the restroom, but apparently none of the people from the group counseling session saw him posting a flyer.  He did the same thing on a second occasion a week later.  About one and a half to two weeks later, the authorities determined that he was the person who had posted the flyers and that he was a member of the Coast Guard.  (R. at 83-88; Prosecution Ex. 1 at 8-9.)

Appellant affirmed his belief in the facts set forth above during the providence inquiry. He also acknowledged that his conduct "establishes conclusively that he did recruit for, solicit membership in, and promote the activities of the Ku Klux Klan while publicly displaying an affiliation with the Armed Services." (R. at 89; Prosecution Ex. 1 at 9.)  When the military judge asked how he was publicly displaying that affiliation, he answered, "Driving a government vehicle, and they all knew I was in the service," further explaining that "they" meant "[t]he

---

within the meaning of Article 92, Uniform Code of Military Justice, and apply to all military members without further implementation."

[3] Any ambiguity in his admission does not provide a substantial basis for questioning the guilty plea. *See United States v. Prater*, 32 MJ 433, 436 (C.M.A. 1991).

[4] The specification of which he was found guilty alleges more fully that he "did . . . wrongfully recruit for, solicit membership in, and promote the activities of the Ku Klux Klan".

counselors and the rest of the attendees." (R. at 90-91.) He had told the police that he chose the airport as a place to post the flyers because he thought a large number of people would see them there. (R. at 87; Prosecution Ex. 1 at 9.) He acknowledged that his conduct took place in public and had a tendency to bring the service into disrepute, or tended to lower it in public esteem, and he added his personal view of the service-discrediting effect. (R. at 91; Prosecution Ex. 1 at 9.) Finally, he agreed that recruiting for the KKK was wrongful. (R. at 92.)

Appellant now argues that these facts do not amount to a public display of affiliation with the Armed Services, particularly since he was not identified as the person who posted the flyer until nearly two weeks later.

Before a military judge may accept a plea of guilty, the accused must believe and admit every element of the offense, *United States v. Whiteside*, 59 M.J. 903, 906 (C.G.Ct.Crim.App. 2004) (citing R.C.M. 910(e) Discussion); and the military judge must be satisfied that there is a factual basis for the plea, Rule for Courts-Martial (R.C.M.) 910(e), Manual for Courts-Martial (MCM), United States (2005 ed). A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion. *United States v. Eberle,* 44 M.J. 374, 375 (C.A.A.F. 1995). A guilty plea should not be set aside on appeal unless there is a "'substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Appellant's argument is based on a definition of "publicly displaying" that requires a person, a member of the public, to actually be present and see the display. We reject this definition and instead define "publicly displaying" as taking place in an area available to the public, whether or not another person is actually present. *See United States v. Nygren*, 53 M.J. 716, 718 (C.G.Ct.Crim.App. 2000). There were other people at the airport for the session Appellant was attending. Appellant could not control the possibility that another person might walk in and see him posting a flyer. In our view, that possibility, that a member of the public who knew Appellant to be in the Coast Guard could have readily seen him posting a flyer, constitutes a sufficient factual basis for his guilty plea; the military judge did not abuse his discretion in accepting the plea.

The recent decision of the Court of Appeals for the Armed Forces (CAAF) in *United States v. Wilcox*, 66 M.J. 442 (C.A.A.F. 2008) calls for our analysis of the same specification from another perspective.[5]  In *Wilcox*, the accused was found guilty after pleading not guilty to a specification under Article 134, UCMJ alleging, in pertinent part, that he wrongfully advocated anti-government and disloyal sentiments while identifying himself as an Army paratrooper in an online profile.  CAAF scrutinized the legal sufficiency of the evidence in light of the First Amendment's protection of free speech, and found it wanting on the element of being service-discrediting (as well as on the element of being prejudicial to good order and discipline).  *Id.*

Applying the formula set forth in *Wilcox*, the first question is whether Appellant's speech is "otherwise protected under the First Amendment."  *Id.* at 447.  For the purpose of this issue, we will assume that it is protected speech.

Next, we are to determine whether the elements of the offense were proved.  *Id.*  Here, our case diverges from *Wilcox* procedurally in that we have a guilty plea.  The question is whether Appellant pleaded providently.  As noted above, this question becomes whether he admitted the elements, and whether there was a factual basis.  As recited above, Appellant explicitly admitted the service-discrediting effect, and, as to factual basis, admitted the public nature of his conduct, which bears strongly on service discredit as well as being separately pleaded.  We note, too, the contrast between his conduct, which was on the ground, so to speak, and the on-line conduct at issue in *Wilcox*.  Surely the possibility of a member of the public observing Appellant's conduct and taking it seriously was much greater than such a possibility in the *Wilcox* case.  We find that the elements of the offense were proved in this case.

Finally, *Wilcox* requires that we strike a balance "between the essential needs of the armed services and the right to speak out as a free American."  *Id.* (quoting *United States v. Priest*, 21 USCMA 564, 570; 45 C.M.R. 338, 344 (1972)).  Like CAAF, we "must weigh the gravity of the effect of the speech, discounted by the improbability of its effectiveness on the audience the speaker sought to reach, to determine whether the conviction is warranted."  *Id.* at 449 (citing *Priest*, 21 USCMA at 570-71, 45 C.M.R. at 344-45).

---

[5] Pursuant to our order, the parties filed briefs addressing *Wilcox*.

Having weighed this case as prescribed, we conclude that Appellant's conviction is justified despite First Amendment concerns. In making this determination on an issue not presented at trial, we believe we may look to evidence presented after findings. Besides the gravity inherent or readily inferable in the circumstances of Appellant's conduct brought out during the providence inquiry, considerable evidence of significant effects at the airport was presented before sentencing. The director of the airport, an Air Force retiree, testified that upon discovery of the first flyer, he assessed whether it constituted a threat and, after appropriate consultation, concluded it did not. Upon discovery of the second flyer the next week, security awareness and procedures were increased and an investigation ensued, placing a burden on airport resources until the source of the flyers was determined. He also testified that when he found out the source of the flyers was an active duty Coast Guard person, "it just made me sick." We think the potential effects, both stated and inherent, of Appellant's conduct on the Coast Guard's reputation outweigh Appellant's interest in his right to speak out while on government business at the airport.[6]

We find no reason to disturb the conviction of Specification 1 of Charge VII, recruiting for the Ku Klux Klan.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed. Appropriate authority shall issue a new promulgating order correcting the erroneous statement of pleas and findings as to Specifications 6 and 7 of Charge III; consolidating Specifications 1 through 6 of Charge III; consolidating Specifications 8 through 10 of Charge III; and dismissing either Charge IV or Specification 5 of Charge VII.

---

[6] On a different date, Appellant drove his own vehicle to a nearby mall and placed Ku Klux Klan recruiting flyers on the windshields of vehicles parked there. (R. at 86; Prosecution Ex. 1 at 9.) This conduct was not charged as an offense. If it had been, a like balancing would surely result in a conclusion in Appellant's favor.

Judges KANTOR and McGUIRE concur.



For the Court,


Ryan M. Gray
Clerk of the Court