# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant DANIEL C. ARIZMENDI**
**United States Army, Appellant**

ARMY 20110966

United States Army Intelligence Center of Excellence and Fort Huachuca
James Varley, Military Judge
Colonel Thomas C. Modeszto, Staff Judge Advocate

For Appellant:  Captain James P. Curtain, JA; Mr. William E. Cassara, Esquire (on brief).

For Appellee:  Major Catherine L. Brantley, JA; Captain Samuel Gabremariam, JA (on brief).

1 July 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of violating a lawful general order and one specification of conduct to the prejudice of good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934 (2006) [hereinafter UCMJ].  Contrary to his pleas, appellant was convicted of three specifications of wrongful use of a controlled substance and one specification of rape, in violation of Articles 112a and 120, UCMJ, 10 U.S.C. §§ 912a, 920 (2006). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for thirty months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us for review under Article 66, UCMJ.  Appellant raises two assignments of error to this court, one of which merits discussion and relief.

ARIZMENDI— ARMY 20110966

Appellant's remaining assignment of error and those matters appellant personally raises pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), are either without merit or rendered moot.

## BACKGROUND

In Specification 2 of Charge VI, appellant was charged with an unlisted general disorder in violation of Article 134, UCMJ. The specification alleged:

> In that [appellant], U.S. Army, did, at or near Fort Huachuca, Arizona, between on or about 1 June 2009 and 1 November 2010, wrongfully have a tattoo of a marijuana plant on his finger, and notify at least one Soldier he had a tattoo of a marijuana plant on his finger, which conduct, under the circumstances, was prejudicial to good order and discipline in the Armed Forces and of a nature to bring discredit upon the Armed Forces.

Prior to trial, appellant entered into a pretrial agreement wherein he agreed to plead guilty to certain offenses, including Specification 2 of Charge VI, in exchange for a cap on his sentence to confinement. In accordance with this pretrial agreement, appellant entered into a stipulation of fact.

During the providence inquiry, the military judge advised appellant of the elements for Specification 2 of Charge VI, including: that appellant wrongfully had a tattoo of a marijuana plant or leaf on his finger and notif[ied] at least one other soldier that [he] had a tattoo of a marijuana leaf on [h]is finger; and that under the circumstances appellant's conduct was to the prejudice of good order and discipline and of a nature to bring discredit upon the armed forces. The tattoo was located on appellant's left hand, on the inside of his middle finger, facing his index finger and was roughly the size of a dime.

The military judge questioned appellant regarding the wrongfulness of this conduct:

> MJ: At this time, . . . tell me why you are guilty of the offense listed in Specification 2 of Charge VI.
>
> ACC: Sir, in 2003, right before I deployed, I was stationed at Fort Hood and that was the beginning [of] the initial wave to Iraq, which we were part of. Being in that mind frame and a young specialist, I went and got a tattoo of the substance that I used to enjoy before I joined the military and knowing that I was going to deploy . . .

2

thinking back to those Vietnam movies like "hey, why not? Might as well. I might not come back . . . ." So, I ended up getting a tattoo on my finger . . . sometime in 2009, I showed . . . Sergeant [DR] that I had the tattoo.

He was probably one out of five soldiers throughout my Army career that knew I had this tattoo . . . . I completely understand that it is – it discredits the service. And me being an NCO need to set the example . . . . And drugs are definitely not allowed and they're wrong in the military and this could be showing the public that the military is promoting drugs, which they are not.

. . . .

MJ: And you usually keep this tattoo hidden from public view when you're around other members of the military?

ACC: Yes, sir.

. . . .

MJ: Okay, between 1 Jun 2009 and 1 November 2010, did you show this tattoo to another soldier, that is, [Sergeant DR]?

ACC: Yes, sir.

MJ: What were the circumstances that that came up in?

ACC: We were at a band TDY . . . . we were all hanging out at the bar . . . and it just came up. He actually saw it. My hand was on the table and . . . he was like "Hey, what is that?" and I showed it to him and said "what do you think it is?"

. . . .

MJ: And did [he] ask you what the tattoo was or did you just notice him looking at it and you told him?

ACC: Yes, sir, he asked what it was and . . . I said "What do you think it is?" and then I made a little act like I was inhaling from a [marijuana pipe] bowl.

3

After additional questioning, the military judge then attempted to solicit from appellant why he believed his conduct was of a nature to bring discredit upon the armed forces. In response to the military judge's questioning, appellant stated:

> The public -- the way they view the military -- they view us in a very uplifting type as people who, as they call, protect our freedom and protect our rights. It was definitely wrong of me to get it because out in public people see it. It may change their beliefs on how they view the military.

The military judge then continued to question appellant on the service discrediting nature of the offense. The colloquy continued as follows:

> MJ: And you were going off to war and, not unlike many young soldiers, you decided to get a tattoo, so you did. One possible interpretation of the person—and one that I am thinking of with regard to a nature to discredit the armed services is you would have a tattoo like that put on your finger to show support for the use of marijuana either because you enjoy using it or you want to encourage other people to use it or maybe as just kind of a demonstration of your contempt of the laws against marijuana both in civilian society as well as under the Uniform Code of Military Justice? Did that play any role in the tattooing of your finger or your display of it to other people?
>
> ACC: Not necessarily, sir. It was more of a personal reason. I'm not -- I don't go out and sign petitions saying that we need to legalize it and what not sir. I just -- it was more of my personal thing, you know, that's what I did before and that's pretty much it, sir.

Still seeming to harbor concerns about the criminality of the charged conduct, the military judge continued questioning appellant as follows:

> MJ: [I]'m not clear that he actually showed it to anybody. It appears that other people noticed it and he would just explain that it's a marijuana leaf. Is that about right, [appellant]?
>
> ACC: Yes, sir.
>
> . . . .

4

> MJ: And do you think the soldiers that you displayed it to
> might think that you were, essentially advocating the use
> of marijuana?
>
> ACC: In some respects, sir, yes.

The military judge did not ask appellant to clarify his answer. Following this line of questioning, the military judge asked appellant if he believed his conduct was service discrediting and prejudicial to good order and discipline. Appellant responded yes but provided little additional information. Following appellant's conclusory and speculative responses, the military judge did not seek any additional information.

Based on the military judge's questions and the appellant's responses, the military judge found appellant's plea provident and accepted it. We disagree with this finding and take appropriate action in our decretal paragraph.

## LAW AND DISCUSSION

In his assignment of error, appellant alleges there is a substantial basis in law and fact to question the providence of his plea of guilty to Specification 2 of Charge VI. Specifically, appellant argues the military judge failed to address the inconsistency between appellant's providence inquiry and the stipulation of fact. In the stipulation of fact, appellant agreed that, as an E-6 in the Army, he set a poor example by getting a tattoo of a marijuana plant on his finger and showing it to at least one fellow soldier assigned to his unit. However, during the providence inquiry, appellant stated rather than affirmatively seeking to show it to others, on this occasion, he merely responded to a question by another soldier about the tattoo. We agree the military judge failed to resolve the alleged inconsistency. Furthermore, we find that an inadequate factual predicate was established to support the terminal element in this case.

We review a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008); *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). "In doing so, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322.

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit "factual circumstances as revealed by the accused himself [that] objectively support that plea[.]" *United States v. Davenport*, 9 M.J. 364, 367

(CMA 1980). It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty. *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996). The record of trial must reflect not only that the elements of each offense charged have been explained to the accused, but also "make clear the basis for a determination by the military trial judge . . . whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). "The fundamental requirement of [a] plea inquiry under [*Care*] and [Rule for Courts-Martial (R.C.M.)] 910 involves a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers that describe his personal understanding of the criminality of his or her conduct." *United States v. Medina*, 72 M.J. 148, (C.A.A.F. 2013) (quoting *United States v. O'Connor*, 58 M.J. 450, 469 (C.A.A.F. 2003).

In this case, the providence inquiry reveals the appellant did not seek to show the tattoo to others and often forgot he even had the tattoo. Appellant agreed with the judge that given the location of the tattoo, someone would have to have a pretty good eye to even notice it. Additionally, appellant described obtaining the tattoo as personal – not an act intending to advocate for the use of drugs by displaying it to others. Appellant also stated he kept it hidden and didn't show it to others, but if someone asked, he would simply tell them it depicted a marijuana leaf.

While the military judge questioned whether appellant's actions constituted a crime or not, he ultimately concluded that the gravamen of the offense boiled down to appellant's marijuana leaf tattoo and his one-time display of it to an inquiring soldier, mixed with the gesture of appellant simulating the smoking of a marijuana pipe in response to the question of what the tattoo depicted. Based on the totality of the providence inquiry, we are not confident it was established appellant's actions were, in fact, prejudicial to good order and discipline and service discrediting.

As a matter of law, in a given factual scenario, possessing a marijuana leaf tattoo combined with certain conduct could very well constitute an offense amounting to conduct prejudicial to good order and discipline and of such a nature to bring discredit upon the armed forces. However, based on these circumstances, we are at a loss to find the basis for the military judge's conclusion that the conduct in this case rose to a criminal level. *See United States v. Jordan,* 57 M.J. 236, 239 (C.A.A.F.2002). This is especially true where potentially constitutionally protected behavior requires a direct and palpable impact in order to be criminalized. *See United States v. Wilcox*, 66 M.J. 442 (C.A.A.F. 2008); *United States v. Hartman*, 69 M.J. 467 (C.A.A.F. 2011). Therefore, we conclude appellant's plea of guilty to this Article 134 offense was improvident.

**CONCLUSION**

The finding of guilty to Specification 2 of Charge VI is set aside.  We affirm the remaining findings of guilty.  Reassessing the sentence on the basis of the error noted, the entire record, including the military judge's specific assertion after sentencing that he assessed no punishment for the Article 134 offense, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986) and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion, the court affirms the sentence. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.  *See* Articles 58b(c) & 75(a), UCMJ.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7