*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Mark J. GRIJALVA, Machinery Technician Third Class
United States Coast Guard, Appellant

**No. 23-0215**
Crim. App. No. 1482

Argued February 6, 2024—Decided June 26, 2024

Military Judges: Paul R. Casey and Diane M. Croff

For Appellant: *Lieutenant Schuyler B. Millham* (argued).

For Appellee: *Lieutenant Elizabeth Ulan* (argued); *John Nolan*, Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Judge SPARKS and Judge JOHNSON joined. Judge HARDY filed a separate opinion concurring in the judgment. Chief Judge OHLSON filed a dissenting opinion.

————————

Judge MAGGS delivered the opinion of the Court.

The "preemption doctrine" generally prohibits using Articles 133 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 933-934 (2018), to charge conduct covered by Articles 80 through 132, UCMJ, 10 U.S.C. §§ 880-932 (2018). *See United States v. Avery*, 79 M.J. 363, 366 (C.A.A.F. 2020); *Manual for Courts-Martial, United States* pt. IV, para. 91.c.(5)(a) (2019 ed.) (*MCM*). Appellant asserts that this doctrine requires us to dismiss a specification alleging that he violated Article 134, UCMJ, by broadcasting intimate visual images of a civilian without her consent. He argues that preemption applies because Article 117a, UCMJ, 10 U.S.C. § 917a (2018), covers the same conduct. For reasons explained below, we agree with Appellant.

## I. Background

B.C., a civilian, stored various personal photographs in her account with Snapchat, a social media platform. In February 2019, Appellant gained access to this account by guessing B.C.'s password. Appellant discovered nude images of B.C. stored in the account. Appellant electronically shared some of these nude images with other people in exchange for money. One recipient of the images was a servicemember.

Several charges against Appellant were subsequently referred to a general court-martial. At issue in this appeal is Specification 2 of Charge III (hereinafter referred to as Specification 2), which alleged that Appellant had violated Article 134, UCMJ, by:

> knowingly, wrongfully, and without the explicit consent of B.C. broadcast[ing] an intimate visual image of B.C., who is identifiable from the visual image or from information displayed in connection with the visual image, when he knew or reasonably should have known that the visual image was made under circumstances in which B.C. retained a reasonable expectation of privacy regarding any broadcast and when he knew or reasonably should have known that the broadcast of the visual image

was likely to cause harm, harassment, or emotional distress for B.C., or to harm substantially B.C. with respect to her safety, business, calling, career, reputation, or personal relationships, an act which is of a nature to bring discredit upon the armed forces.

Appellant moved during trial to have this specification dismissed under the preemption doctrine, arguing that Article 117a, UCMJ, covered the offense of broadcasting intimate images without the consent of the person depicted and that the same conduct therefore could not be charged under Article 134, UCMJ. The military judge denied the motion in a written ruling. A general court-martial consisting of officer and enlisted members subsequently found Appellant guilty of Specification 2, among other offenses. The military judge sentenced Appellant to three months of confinement, reduction to the pay grade of E-3, and a bad-conduct discharge. The United States Coast Guard Court of Criminal Appeals affirmed the findings but reduced the sentence because of unreasonable post-trial delay. *United States v. Grijalva*, 83 M.J. 669, 677 (C.G. Ct. Crim. App. 2023). We granted review of the question "[w]hether the unenumerated Article 134, UCMJ, offense charged in Specification 2 of Charge III is preempted by Article 117a, UCMJ, which Congress enacted to address the wrongful broadcast or distribution of intimate visual images." *United States v. Grijalva*, 84 M.J. 103 (C.A.A.F. 2023) (order granting review).

## II. Standard of Review

Whether Articles 80 through 132, UCMJ, preempt a specification alleging a violation of Article 134, UCMJ, is a question of law that this Court reviews de novo. *Avery*, 79 M.J. at 366 (citing *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018)).

## III. Discussion

To answer the granted question, we must apply precedent concerning both the preemption doctrine and the First Amendment's guarantee of the freedom of speech. We

briefly summarize the applicable principles before turning to our analysis.

### A. Article 134, UCMJ, and the Preemption Doctrine

Specification 2 alleges an offense under the second clause of Article 134, UCMJ, which provides:

> *Though not specifically mentioned in this chapter, . . . all conduct of a nature to bring discredit upon the armed forces . . .* shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

(Emphasis added.) This general language covers a broad range of conduct that, in the words of the President, might "injure the reputation of" the armed forces. *MCM* pt. IV, para. 91.c.(3). The President has sought to identify some of this conduct by enumerating various offenses that might be charged under Article 134, UCMJ. *See MCM* pt. IV, paras. 92-108 (enumerating offenses ranging from "animal abuse" to "straggling"). Other conduct, although not enumerated, may also be charged as a violation of the second clause of Article 134, UCMJ. *See MCM* pt. IV, para. 91.c.(6)(a).

The scope of Article 134, UCMJ, however, is not unlimited. The initial phrase of the article expressly restricts its reach only to conduct "not specifically mentioned in this chapter." This Court has interpreted this phrase as prohibiting the charging of conduct as an offense under Article 134, UCMJ, if Congress has already codified the conduct as an offense in Articles 80 through 132, UCMJ. *Avery*, 79 M.J. at 366. For example, in *United States v. Norris*, 2 C.M.A. 236, 237, 8 C.M.R. 36, 37 (1953), the government charged the accused with larceny in violation of Article 121, UCMJ, 50 U.S.C. § 715 (1952). The accused attempted to plead guilty to a lesser offense of "wrongful taking" under Article 134, UCMJ, that had almost the same elements as "wrongful appropriation" under Article 121, UCMJ, but differed in that it did not require proof of a specific intent to deprive the rightful owner of the property. *Id.* at 238, 8

C.M.R. at 38. The law officer advised the court-martial that it could not find the accused guilty of an offense other than larceny or wrongful appropriation under Article 121, UCMJ. *Id.*, 8 C.M.R. at 38. This Court held that the law officer's advice was correct, explaining:

> Congress has, in Article 121, covered the entire field of criminal conversion for military law [by defining the offenses of larceny and wrongful appropriation]. We are not disposed to add a third conversion offense to those specifically defined. It follows that there is no offense known as "wrongful taking" requiring no element of specific intent, embraced by Article 134 of the [UCMJ].

*Id.* at 239-40, 8 C.M.R. at 39-40.

This Court determines whether a particular article has "covered the entire field," and thus preempts charging similar conduct under Article 134, UCMJ, by considering two questions: "The primary question is whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code; the secondary question is whether the offense charged is composed of a residuum of elements of a specific offense." *United States v. Wright*, 5 M.J. 106, 110-11 (C.M.A. 1978). This Court has held that the intent of Congress may be discerned "through direct legislative language or express legislative history." *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010).

### B. Article 134, UCMJ, and the First Amendment

The act of distributing nonobscene visual images is a form of speech. *New York v. Ferber*, 458 U.S. 747, 764-65 (1982). We thus must consider the relationship between the First Amendment's protection of speech and the conduct alleged in Specification 2. This is a complicated issue because the United States Supreme Court has stated: "While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections." *Parker v. Levy*, 417 U.S. 733, 758 (1974). Consistent

with this view, the Supreme Court has held that the *first clause* of Article 134, UCMJ, which addresses conduct that is contrary to good order and discipline, is not void for vagueness and that the government can use the first clause of Article 134, UCMJ, to punish some speech that might otherwise be protected in civilian life. *Id.* at 755, 760-61. In reaching these conclusions, the Supreme Court relied on holdings of this Court that had "narrowed the very broad reach of the literal language" of the first clause of Article 134, UCMJ, such that it only applies "to conduct that is 'directly and palpably—as distinguished from indirectly and remotely—prejudicial to good order and discipline.' " *Id.* at 753-54 (quoting *United States v. Sadinsky*, 14 C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964)).

In *United States v. Wilcox*, 66 M.J. 442, 443-44, 446-47 (C.A.A.F. 2008), this Court applied the principles of *Parker* in considering the application of the First Amendment to a specification alleging that a servicemember's speech in a civilian context was service discrediting and therefore violated the *second clause* of Article 134, UCMJ. This Court held that if the government attempts to use the second clause of Article 134, UCMJ, to punish "speech that would be impervious to criminal sanction in the civilian world," the government must prove "a direct and palpable connection between [the] speech and the military mission or military environment." *Id.* at 447-48. The Court explained that this requirement exists to strike "the proper balance . . . between the essential needs of the armed services and the right to speak out as a free American." *Id.* at 447 (citation omitted) (internal quotation marks omitted).

### C. Analysis of Specification 2 in this Case

Appellant contends that the preemption doctrine requires this Court to dismiss Specification 2 because Congress has addressed the conduct at issue in Article 117a(a), UCMJ. To assess this argument, we must first compare the elements of Article 117a(a), UCMJ, to the language of Specification 2.

Article 117a(a), UCMJ, is a long and complicated provision that states in relevant part:

> Any person subject to this chapter—
>
> > (1) who knowingly and wrongfully broadcasts . . . an intimate visual image of another person . . . who—
> >
> > > (A) is at least 18 years of age . . . ;
> > >
> > > (B) is identifiable from the intimate visual image . . . ; and
> > >
> > > (C) does not explicitly consent . . . ;
> >
> > (2) who knows or reasonably should have known that . . . the person depicted . . . retained a reasonable expectation of privacy . . . ;
> >
> > (3) who knows or reasonably should have known that the broadcast . . . is likely—
> >
> > > (A) to cause harm . . . ; or
> > >
> > > (B) to harm substantially the depicted person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships; and
> >
> > (4) whose conduct . . . had a reasonably direct and palpable connection to a military mission or military environment,
>
> > is guilty of wrongful distribution of intimate visual images.

Specification 2 alleges a violation of the second clause of Article 134, UCMJ, but its wording, as quoted above, closely tracks the wording of Article 117a(a), UCMJ. Specification 2 avers that Appellant "knowingly [and] wrongfully . . . broadcast[ed] an intimate visual image of B.C."; that B.C. "is identifiable from the intimate visual image"; that the broadcast was done "without the explicit consent of B.C."; that Appellant "knew or reasonably should have known that the visual image was made under circumstances in which B.C. retained a reasonable expectation of privacy"; and that Appellant "knew or reasonably should

have known that the broadcast . . . was likely to cause harm . . . or to harm substantially B.C. with respect to her safety, business, calling, career, reputation, or personal relationships."

Despite these similarities, the requirements of Article 117a(a), UCMJ, facially appear to differ from the requirements of Specification 2 in two ways. First, Article 117a(a)(1)(A), UCMJ, expressly requires proof that the person depicted is at least eighteen years of age, while Specification 2 does not expressly allege B.C.'s age. Second, Article 117a(a)(4), UCMJ, expressly requires proof of "a reasonably direct and palpable connection to a military mission or military environment," while Specification 2 does not expressly allege such a connection.

The Government argues that these two elemental differences, coupled with evidence of the legislative intent of Article 117a, UCMJ, are enough to exclude this case from the preemption doctrine. In support of this argument, the Government cites *United States v. Kick*, 7 M.J. 82, 84-85, 87 (C.M.A. 1979), a case in which this Court upheld a specification alleging negligent homicide in violation of Article 134, UCMJ, even though the negligent homicide specification lacked only the intent element required for either murder under Article 118, UCMJ, 10 U.S.C. § 918 (1976), or manslaughter under Article 119, UCMJ, 10 U.S.C. § 919 (1976). Relying on this Court's statement in *Anderson*, 68 M.J. at 387, that the intent of Congress can be discerned through legislative history, the Government also cites various statements made by members of Congress prior to the enactment of Article 117a, UCMJ. The Government argues based on these statements that Congress never intended to "cover the entire field" of Appellant's conduct with Article 117a, UCMJ. Instead, the Government contends that this legislative history reveals that Congress intended Article 117a, UCMJ, to address only the wrongful broadcast of intimate photographs in situations where a military

connection exists, such as the distribution of intimate photographs of a servicemember to other servicemembers.[1]

Upon closer inspection, we cannot accept the Government's arguments because each of the two apparent differences between Article 117a(a), UCMJ, and Specification 2 is illusory. Consider first the express requirement in Article 117a(a)(1)(A), UCMJ, that the victim be at least eighteen years of age. It is true that Specification 2 does not *expressly* allege that B.C. is at least eighteen years of age. But that is not the end of the inquiry. This Court has held that "the essential elements of a crime need not be expressly alleged so long as they may be found by reasonable construction of other language in the . . . specification." *United States v. Brecheen*, 27 M.J. 67, 68 (C.M.A. 1988). Rule for Courts-Martial 307(c)(3), similarly provides that a specification may allege elements of a "charged offense expressly or by necessary implication." In this case, Specification 2 expressly alleged that Appellant distributed photographs of B.C. without her "explicit consent." We find that these words, when construed in the context of the other words of Specification 2, implied that B.C. was a person old enough either to consent or to not consent to the distribution of her intimate images and thus that she was at least eighteen years old.[2] We therefore see no material difference between what the Government would have had

---

[1] The Government, however, concedes in its brief that the military connection element of Article 117a(a)(4), UCMJ, could be met when there is a civilian victim. In addition, this Court recently held that the military connection element could be met if a servicemember *received* the intimate images. *United States v. Hiser*, 82 M.J. 60, 66 (C.A.A.F. 2022). In this case, as noted above, one servicemember actually did receive the intimate images of B.C.

[2] The use of the words "without the explicit consent of B.C." in Specification 2 distinguishes it from child pornography offenses under Article 134, UCMJ, which do not require a showing of a lack of consent and apply only when the victim is a "minor." *See MCM* pt. IV, paras. 95.b.(3), 95.c.(4). For purposes of child pornography offenses, "[m]inor" is defined as "any person under the age of 18 years." *MCM* pt. IV, para. 95.c.(7).

to prove under Article 117a(a)(1)(A), UCMJ, and what the Government alleged in Specification 2.[3]

Our analysis of the requirement under Article 117a(a)(4), UCMJ, that the Government must prove "a reasonably direct and palpable connection to a military mission or military environment" is similar. It is true that Specification 2 expressly alleges only that Appellant's conduct was "service discrediting" and does not expressly allege that it had "a reasonably direct and palpable connection to a military mission or military environment." But again, that cannot be the end of our inquiry. Under *Wilcox*, the Government was required to prove such a military connection if Specification 2 alleged conduct "implicating the First Amendment" in the civilian context. 66 M.J. at 447-48.

In some cases, the question whether the First Amendment would or would not protect speech in a civilian context is not complicated. In *Wilcox*, for example, the accused made statements "on issues of social and political concern" that even if distasteful were at " 'the core of what the First Amendment is designed to protect.' " *Id.* at 446-47 (quoting *Virginia v. Black*, 538 U.S. 343, 365 (2003)). But whether the First Amendment would allow the government to punish the conduct alleged in Specification 2 in the civilian world—the wrongful broadcast of intimate visual images—is a more complex issue.

The Supreme Court, as explained above, has held that the act of distributing nonobscene visual images is a form of protected speech. *Ferber*, 458 U.S. at 764-65. Even so, a

---

[3] In reaching this conclusion, we acknowledge that Specification 2 would have been clearer on this point if it had expressly alleged that B.C. was at least eighteen years old. By way of comparison, Article 117a(a), UCMJ, expressly requires the government to prove that the victim is at least eighteen years old, even though it also expressly requires the government to prove that the victim did not explicitly consent. Our task, however, is not to critique the drafting of Specification 2 but instead to determine its reasonable meaning.

statute might limit such speech in a civilian context, consistent with the First Amendment, if the limits were not overbroad, if the limits were not void for vagueness, if the limits passed strict scrutiny, and so forth. *See, e.g.*, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (addressing these issues in the majority and concurring opinions when assessing the constitutionality of punishing the distribution of virtual child pornography). In this case, Appellant was not charged with violating a statute that specifically addressed the broadcast of intimate images. Instead, he was charged with violating the broad language of the second clause of Article 134, UCMJ. The details of his offense must be discerned from the words of Specification 2. These words, however, are not sufficient for a complete First Amendment analysis. For example, Specification 2 does not define the term "intimate image," making it impossible to decide whether the term would be overbroad if it appeared in a statute addressing speech in a civilian context.

We interpret *Wilcox* to require the Government to prove a direct and palpable connection to the military mission or environment not only when it is clear that the First Amendment would protect speech in a civilian context, but also in cases, as here, where a court cannot determine whether the speech would be protected. Appellant's conduct is, at minimum, speech "implicating the First Amendment." *Wilcox*, 66 M.J. at 447. Accordingly, in this case, we find that the Government was required to prove such a connection under Article 134, UCMJ, even though Specification 2 did not expressly state this requirement. Thus, the apparent difference between Article 117a(a)(4), UCMJ, and the language of Specification 2 is illusory.[4]

---

[4] Although we do not rest our decision on this point, we note that Congress may have intended to require the Government to prove a direct and palpable connection to the military mission or environment in Article 117a(a)(4), UCMJ, to comply with the requirements of *Wilcox*. *See* Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Rep. Mac Thornberry, Chairman, H. Comm. on the Armed Services, & Sen. John McCain, Chairman, S. Comm. on the Armed Services (Nov. 8, 2017),

For these reasons, the elements of Article 117a(a), UCMJ, and Specification 2 are essentially the same. This case therefore differs from precedents like *Kick*, upon which the Government relies, where at least one element was different. 7 M.J. at 85. In this instance, we see no need to delve into legislative history to ascertain anything further about the intent of Congress. The preemption doctrine applies in this situation because the conduct alleged in Specification 2 was, in the words of the initial phrase of Article 134, UCMJ, "specifically mentioned in this chapter."

Put another way, the primary question in applying the preemption doctrine is "whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code." *Wright,* 5 M.J. at 110-11. Here, we see no congressional intent to allow conduct already punishable by Article 117a, UCMJ, to also be punishable by Article 134, UCMJ. The secondary question is "whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of . . . Article[] . . . 134." *Id.* at 111. We answer this question in the affirmative because, as explained, the elements are implicitly the same. Accordingly, while the Government might have charged the conduct alleged in Specification 2 under Article 117a, UCMJ, the Government did not do so, and the Government could not charge the conduct under Article 134, UCMJ.[5]

---

https://www.justice.gov/ola/page/file/1010611/dl (recommending that, to avoid First Amendment concerns in accordance with *Wilcox,* a draft version of Article 117a, UCMJ, should be revised to limiting its application to the distribution of visual images with " 'a reasonably direct and palpable connection' " to the " 'military mission or military environment' ").

[5] We express no opinion on whether the Government could have proved "a reasonably direct and palpable connection to a military mission or military environment" in this case. *See Hiser,* 82 M.J. at 66 (addressing this requirement). That issue was not presented to the court-martial and therefore is not before this Court.

## IV. Conclusion

The granted issue is answered in the affirmative. The decision of the United States Coast Guard Court of Criminal Appeals is set aside as to Specification 2 of Charge III. Specification 2 of Charge III is dismissed. The decision is affirmed as to the remaining findings. The record of trial is returned to the Judge Advocate General of the Coast Guard for remand to the United States Coast Guard Court of Criminal Appeals either to reassess the sentence based on the affirmed findings or to order a sentence rehearing.

Judge HARDY, concurring in the judgment.

In the military justice system, the preemption doctrine exists to prevent the government from easing its evidentiary burden at trial by eliminating vital elements from congressionally established, enumerated offenses and charging the remaining elements as a novel offense under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018). *United States v. Avery*, 79 M.J. 363, 366 (C.A.A.F. 2020). Because preemption is a question of statutory interpretation, when asking whether an Article 134 offense is preempted, our precedent directs us to determine whether the charged offense is "composed of a residuum of elements" from an enumerated article. *Id.* (internal quotation marks omitted) (citation omitted). This makes sense because it is well established that comparing elements is the sole method for determining whether offenses charged under two statutes should be considered the same offense. *United States v. Dixon*, 509 U.S. 688, 703-04 (1993).

Although comparing the elements in this manner would seem to be sufficient for finding preemption, our case law places an additional restriction on the scope of the preemption doctrine. Under our precedent, an enumerated article will only preempt an Article 134 offense if "Congress intended to limit prosecution for . . . a particular area of misconduct to offenses defined in [those] specific articles of the Code." *Avery*, 79 M.J. at 366 (alterations in original) (internal quotation marks omitted) (citations omitted). To satisfy this requirement, our precedent states that Congress must "indicate through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article, and may not be charged under Article 134, UCMJ." *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010).

As the Government conceded at oral argument, the prosecution in this case took an enumerated UCMJ offense, dropped an element that the Government doubted it could prove beyond a reasonable doubt, and charged the remaining elements as a novel offense under Article 134, UCMJ. Oral Argument at 25:20-26:05, *United States v. Grijalva*

(C.A.A.F. Feb. 06, 2024) (No. 23-0215). Exploiting Article 134, UCMJ, in this way is contrary to the plain language of the article, prohibited by the President in the *Manual for Courts-Martial*, and inconsistent with Supreme Court precedent. Nevertheless, this Court has long ignored those limitations and imposed a congressional-intent requirement that—as Chief Judge Ohlson correctly points out in his dissent—authorized the Government to do exactly what it attempted to do in this case.

I agree with the majority that Appellant's Article 134 offense was preempted, but I take a different approach to reach that conclusion. The congressional-intent prong of this Court's preemption doctrine is entirely judge-made law with no basis in the Constitution, the UCMJ, or the *Manual for Courts-Martial*. It demands an analysis of legislative history—a disfavored and unreliable form of statutory interpretation. When our predecessor court articulated the doctrine, it offered no legal or practical justification for it and did not suggest that it was based on any military necessity. For these reasons, I would discard the congressional-intent prong of this Court's preemption doctrine and decide preemption cases solely on whether the charged Article 134 offense is composed of a residuum of elements from an enumerated UCMJ offense.

## I. Foundations of the Modern Preemption Doctrine

In the military justice system, the preemption doctrine reflects the view that it is improper for the government to use Article 134, UCMJ, to charge servicemembers with lesser versions of the enumerated UCMJ offenses. Congress codified this view—which long predates the establishment of the modern military justice system—in the text of Article 134, UCMJ, and the President reinforced the doctrine in the *Manual for Courts-Martial*. This Court's predecessor first recognized the preemption doctrine in *United States v. Norris*, stating: "We cannot grant to the services unlimited authority to eliminate vital elements from . . . offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134." 2 C.M.A. 236, 239, 8 C.M.R. 36, 39 (1953).

## A. Article 134, UCMJ

Despite its otherwise broad scope, Article 134, UCMJ, expressly limits its own application to offenses "not specifically mentioned in this chapter." This restriction is not new. As Colonel William Winthrop explained over a century ago in reference to the analogous language in the General Article's direct predecessor in the Articles of War: "The construction of these words has uniformly been that they are words of limitation, restricting the application of the Article to offences not named or included in the Articles preceding; the policy of the provision being, . . . to provide a general remedy for wrongs not elsewhere provided for." William Winthrop, *Military Law and Precedents* 725 (2d ed., Government Printing Office 1920) (1895) (internal quotation marks omitted) (citation omitted). Winthrop further explained that the limitation "embraces not only offences wholly distinct from and outside of" the other enumerated articles, but also "acts which, while of the same general nature as those included in certain specific Articles, *are wanting in some single characteristic which distinguishes the latter*." *Id.* (emphasis added).

It has thus been long understood that the plain language of the General Article should prevent the Government from doing exactly what it did here: dropping an element from an enumerated UCMJ offense and charging the resulting lesser offense under Article 134, UCMJ. Notably, Article 134, UCMJ, makes no reference to congressional intent, clear statements, or legislative history. It simply excludes all conduct "specifically mentioned" in the other provisions of the UCMJ.

## B. *Manual for Courts-Martial*

Echoing the statutory text of the General Article, the President has explained that "Article 134 makes punishable acts in three categories of offenses *not specifically covered in any other article of the UCMJ . . . .* If any conduct of this nature is specifically made punishable by another article of the UCMJ, it must be charged as a violation of that article." *Manual for Courts-Martial, United States* pt. IV, para. 91.c.(1) (2019 ed.) (*Manual* or *MCM*) (emphasis added). The President has thus reaffirmed exactly what

Winthrop explained so long ago: that "[t]he preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132." *MCM* pt. IV, para. 91.c.(5)(a).

Consistent with the plain language of Article 134, UCMJ, the President's explanation of the preemption doctrine in the *Manual* also makes no mention of congressional intent. The President's legally binding orders to the field do not limit the application of the preemption doctrine to only those instances where Congress has expressed—either through direct legislative language or express legislative history—an intention that an enumerated article cover a class of offenses in a complete way. To the contrary, the President has ordered that any conduct made punishable by another article of the UCMJ "must be charged as a violation of that article." *MCM* pt. IV, para. 91.c.(1).

### C. *United States v. Norris*

This Court's preemption-doctrine precedent originates with our predecessor court's ruling in *Norris*, 2 C.M.A. 236, 8 C.M.R. 36. There, the recently established court concluded that the government could not charge a service-member with "wrongful taking" under Article 134, UCMJ (unlawfully taking with an intent to *temporarily* deprive), when Congress had criminalized larceny under Article 121, UCMJ, 50 U.S.C. § 715 (1952) (unlawfully taking with an intent to *permanently* deprive). 2 C.M.A. at 239-40, 8 C.M.R. at 39-40. Citing Winthrop for the proposition that the General Article should generally be limited to those crimes not specifically delineated by the punitive articles, the court held that the government lacks the authority to eliminate vital elements from the enumerated UCMJ offenses and charge the remaining elements as an Article 134 offense. 2 C.M.A at 239, 8 C.M.R. at 39.

Cases immediately following *Norris* cited the case for the proposition that conduct that amounts to an offense punishable under other articles of the UCMJ should not be punishable under Article 134, UCMJ. *See, e.g.*, *United States v. Johnson*, 3 C.M.A. 174, 178, 11 C.M.R. 174, 178, (1953) (holding that "all specific instances 'in which any member of the armed forces is through his own fault not at

the place where he is required to be at a prescribed time'
are punishable under the provisions of Articles 85, 86, or
87"); *United States v. Rios*, 4 C.M.A. 203, 206-07, 15 C.M.R.
203, 206-07 (1954) (rejecting the government's contention
that it could charge larceny from the person as a "specially-
tailored" offense under Article 134, UCMJ, rather than an
instance of robbery under Article 122, UCMJ, 50 U.S.C.
§ 716 (1952)); *United States v. Hallett*, 4 C.M.A. 378, 382,
15 C.M.R. 378, 382 (1954) (holding that offenses which are
"assimilable to misbehavior before the enemy" must be
prosecuted under Article 99, UCMJ, 50 U.S.C. § 693
(1952)). Consistent with the court's holding in *Norris*, these
cases found preemption by relying not on legislative his-
tory, but on the statutory text of the enumerated articles.

## II. Introduction of the Congressional-Intent Requirement

Despite the solid statutory and regulatory foundation
undergirding the *Norris* court's view of the preemption doc-
trine, our predecessor court soon began distorting *Norris*'s
straightforward holding by adding a vague congressional-
intent requirement. For example, in *United States v. Tout-
ges*, our predecessor concluded that the appellant's convic-
tion for assaulting a superior officer *not* in the execution of
his office under Article 134, UCMJ, was not preempted by
the enactment of Article 90, UCMJ, 10 U.S.C. § 890 (Supp.
IV 1953-1957) (assaulting a superior officer *in* the execu-
tion of his office). 13 C.M.A. 425, 426-27, 32 C.M.R. 425,
426-27 (1963). Although the case appeared to fall squarely
within the holding in *Norris*, the court declined to apply the
preemption rule from *Norris* on the basis that it could not
find any indication of congressional intent to preempt the
field of assault charges against commissioned officers. 13
C.M.A. at 427, 32 C.M.R. at 427.

Over time, our predecessor court reiterated and rein-
forced this new congressional-intent requirement. As it
stated nearly a decade later in *United States v. Maze*:

> [U]nder *Norris*, more must be shown than that the
> offense alleged under Article 134 includes all but
> one element of an offense under another article.
> The additional showing needed to impose a limi-
> tation on the scope of the first and second parts of

Article 134 is a legislative intent to cover a class of offenses in a complete way.

21 C.M.A. 260, 262-63, 45 C.M.R. 34, 36-37 (1972), *overruled on other grounds by United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011). And in *United States v. Bonavita,* the court unequivocally stated: "The preemption doctrine is operative only where Congress intends to limit specific misconduct to a specific statute." 21 C.M.A. 407, 408, 45 C.M.R. 181, 182 (1972). In these later preemption cases, the court never offered any explanation or justification for the limitation, and instead implied that it was always part of the original ruling in *Norris*. Given that neither the text of Article 134, UCMJ, nor the President's description of the preemption doctrine in the *Manual* supports the inclusion of a congressional-intent requirement, it is not clear why our predecessor reinterpreted *Norris* in this manner.

Our predecessor court's decisions are even more baffling when one considers the Supreme Court's contemporaneous treatment of congressional intent in similar situations. Contrary to our predecessor court, the Supreme Court—when choosing between two alternative interpretations of a criminal statute—requires a clear indication of congressional intent to select the *harsher* interpretation. For instance, in *United States v. Universal C.I.T. Credit Corp.*, the Supreme Court held that when the "allowable unit of prosecution" for a criminal offense is in dispute, "it is appropriate, *before we choose the harsher alternative*, to require that Congress should have spoken in language that is clear and definite." 344 U.S. 218, 221-22 (1952) (emphasis added). Similarly, in *Whalen v. United States*, the Supreme Court held that "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." 445 U.S. 684, 692 (1980).

Applying the same reasoning to the military justice system's preemption doctrine, the Supreme Court would presumably conclude that—to whatever extent congressional intent is relevant at all—there would need to be a clear indication that Congress intended for Article 134, UCMJ, *not* to be preempted. This Court's preemption doctrine takes

the opposite approach, creating a presumption that, absent express language from Congress to the contrary, the government may exploit the harsher alternative and lower its burden of proof by charging lesser versions of enumerated offenses under Article 134, UCMJ.

### III. Stare Decisis

The congressional-intent prong of our preemption doctrine contradicts the plain language of Article 134, UCMJ, disregards the President's explanation in the *Manual*, and is inconsistent with analogous Supreme Court precedent. Nevertheless, because the congressional-intent requirement has been part of our precedent for over sixty years, I must consider the stare decisis factors before discarding it. In my view, the stare decisis factors weigh in favor of abandoning the congressional-intent requirement.

In evaluating the application of stare decisis, this Court considers: "'whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law.'" *United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (quoting *United States v. Quick*, 74 M.J. 332, 336 (C.A.A.F. 2015)).

First, for all the reasons explained above, I believe that the addition of the congressional-intent requirement to our Court's preemption doctrine was poorly reasoned. Our predecessor court never explained or justified it, and the requirement contradicts the text of Article 134, UCMJ, and the *Manual for Courts-Martial*. Furthermore, the doctrine has proven to be unworkable. No one knows what a clear statement of congressional intent in favor of preemption would look like because the Court has never found one.[1] Since the adoption of the congressional-intent requirement, I do not believe that either our predecessor court or

---

[1] Although the majority found the necessary congressional intent in this case, it did so because "the elements of Article 117a(a), UCMJ, and Specification 2 are essentially the same." *United States v. Grijalva*, __ M.J. __, __ (12) (C.A.A.F. 2024). The majority therefore "[saw] no need to delve into legislative history to ascertain anything further about the intent of Congress." *Id.*

this Court has ever found preemption. Over the past sixty years, our preemption doctrine has functioned not as a legitimate test, but as an irrebuttable presumption that novel Article 134 charges are never preempted by an enumerated article.

Second, there have been significant intervening events since our predecessor first articulated the congressional-intent requirement, including the embrace of the Supreme Court's elements test from *Blockburger v. United States,* 284 U.S. 299 (1932), and the evolution of the Supreme Court's guidance regarding congressional intent and legislative history. In 1993, the Supreme Court made clear that the *Blockburger* "same-elements" test is the sole method for determining whether offenses charged under two statutes should be considered the same offense. *Dixon*, 509 U.S. at 703-04. After *Dixon*, there is no basis for considering congressional intent in addition to comparing elements to determine if the charged Article 134 offense is composed of a residuum of elements of an enumerated offense. Furthermore, the preemption doctrine's reliance on congressional intent is at odds with current views on the value of legislative history as a tool of statutory interpretation. As this Court has explained:

> We acknowledge the Supreme Court's recent reminders that "legislative history is not the law," *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) (internal quotation marks omitted) (citation omitted), and that using legislative history to determine legislative intent is "a relic from a bygone era of statutory construction." *Food Mktg. Inst. v. Argus Leader Media,* 139 S. Ct. 2356, 2364 (2019) (internal quotation marks omitted) (citation omitted).

*Avery*, 79 M.J. at 368 n.8. Both legal developments call the continued validity of our congressional-intent requirement into question.

Third, there are no reliance issues. Abandoning the congressional-intent requirement offers servicemembers protection from government overreach. In addition, dispensing with the requirement will make the law more knowable. As currently articulated, our preemption doctrine requires a

servicemember to comb through legislative history—a difficult and indeterminate task for lawyers and an impossible one for the average nonlawyer servicemember—to determine whether a novel Article 134 offense is preempted. Abandoning the congressional-intent requirement would allow servicemembers to rely on the statutory text and the guidance in the *Manual* to know that they cannot be charged with lesser versions of the enumerated offenses under Article 134, UCMJ.

Finally, the Government's charging decision in this case—dropping an unprovable element and charging the lesser offense as a novel Article 134 offense—reeks of prosecutorial overreach and would likely strike the public as fundamentally unfair. The unique grounds on which the majority found preemption in this case are unlikely to occur again in future cases. Strengthening the Court's preemption doctrine to prevent this practice would not risk undermining the public's confidence in the law.

### IV. Conclusion

It bears repeating what happened in this case. Appellant engaged in exactly the type of conduct—broadcasting intimate visual images of another without that person's consent—that Congress made criminal under Article 117a, UCMJ. But Congress only criminalized that conduct if it "had a reasonably direct and palpable connection to a military mission or military environment." Article 117a(a)(4), UCMJ. Fearing it could not prove that element, the Government dropped the direct-and-palpable-connection element and charged the remaining elements as a novel Article 134 offense to ease its evidentiary burden at trial—exactly what the preemption doctrine is intended to prevent. Nevertheless, because this Court has repeatedly refused to find preemption absent a clear showing of congressional intent, the Government, the military judge, the convening authority, and the Coast Guard Court of Criminal Appeals all believed that this charging scheme was permissible.

This case should demonstrate the folly of our preemption doctrine. If our existing doctrine does not allow us to find preemption here, then when would we ever find it? I

would therefore abandon our congressional-intent requirement and simply ask whether the novel Article 134 offense was composed of a residuum of elements from an enumerated offense—in this case Article 117a, UCMJ. Because there is no dispute that it was, I believe that Specification 2 of Charge III was preempted.

I therefore agree with the majority that the decision of the United States Coast Guard Court of Criminal Appeals should be set aside as to Specification 2 of Charge III, that Specification 2 of Charge III should be dismissed, and that the remaining findings should be affirmed. I also agree with the majority's decision to remand the case to the United States Coast Guard Court of Criminal Appeals so that it may either reassess the sentence based on the affirmed findings or order a sentence rehearing.

Chief Judge OHLSON, dissenting.

Consistent with the unanimous opinion of the United States Coast Guard Court of Criminal Appeals and with this Court's precedents, I conclude that Appellant's conviction under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2018), for broadcasting intimate visual images of a civilian without her consent should be affirmed. The majority states that the preemption doctrine is applicable here because it "see[s] no congressional intent to allow conduct already punishable by Article 117a, UCMJ, [10 U.S.C. § 917a (2018)], to also be punishable by Article 134, UCMJ." *United States v. Grijalva*, __ M.J. __, __ (12) (C.A.A.F. 2024). However, this statement by the majority inverts the law as established by this Court. Specifically, our long-standing precedent holds that the burden lies with *an appellant* to produce *clear* evidence through "*direct* legislative language or *express* legislative history" that Congress intended for a particular enumerated article to occupy the field, thereby preventing the charging of certain conduct under Article 134. *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010) (emphasis added); *see also United States v. Kick*, 7 M.J. 82, 85 (C.A.A.F. 1979) ("[I]t must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way."). Here, since Appellant has failed to meet this burden, the preemption doctrine does not apply. Because the majority holds to the contrary, I respectfully dissent.

This Court has adopted a two-prong test to determine when the preemption doctrine applies. First, Congress must have indicated through "direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article" rather than being chargeable under Article 134. *Anderson*, 68 M.J. at 387. This is a difficult standard for an appellant to meet, and this Court has been "extremely reluctant" to conclude that Congress intended to preempt an offense "in the absence of a clear showing of a contrary intent either in the language of the[] codal provisions or their legislative history." *Kick*, 7 M.J. at 85. Only after addressing this "primary question" will this Court reach the second prong and consider whether the charged offense is

"composed of a residuum of elements of a specific offense." *United States v. McGuinness*, 35 M.J. 149, 152 (C.M.A. 1992) (internal quotation marks omitted) (quoting *United States v. Wright*, 5 M.J. 106, 110-11 (C.M.A. 1978)).

Here, Appellant cannot point to *clear* evidence of "direct legislative language or express legislative history" indicating that Congress intended to limit the prosecution of Appellant's misconduct to the provisions of Article 117a. Indeed, the statutory language and the legislative history tend to indicate the contrary. To begin with, the language of Article 117a indicates that Congress did not intend to "occupy the field" with this provision because the final element is restrictive. It states that a servicemember cannot be prosecuted unless his conduct has a "reasonably direct and palpable connection to a military mission or military environment." Article 117a(a)(4), UCMJ. As a result, Article 117a does not reach those scenarios where there is no military nexus. However, Congress presumably did not mean to let such wrongful conduct by servicemembers go unpunished. Therefore, in my view, the idea that Congress intended to occupy the field with Article 117a is counterintuitive in light of the restrictive manner in which the legislation ultimately was worded.

Moreover, the legislative history fails to support Appellant's position.[1] Sponsors of the original bill that eventually became Article 117a emphasized that the statute was "designed to protect our servicemen and women" from the wrongful broadcast of intimate images, and the fact that the new legislation would provide commanders with an "*additional*" tool to combat this problem. *See* 163 Cong. Rec. H4478, H4480 (daily ed. May 23, 2017) (statement of

---

[1] Consistent with our decision in *United States v. Avery*, I not only acknowledge but embrace "the Supreme Court's recent reminders that 'legislative history is not the law,'" 79 M.J. 363, 368 n.8 (C.A.A.F. 2020) (citation omitted), "and that using legislative history to determine legislative intent is 'a relic from a bygone era of statutory construction.'" *Id.* (citation omitted). The only reason I address legislative history in the instant case is because our precedent requires it.

Rep. Martha McSally) (emphasis added); *see also* 163 Cong. Rec. H3053-54 (daily ed. May 2, 2017) (statements of Rep. Martha McSally, Rep. Jackie Speier, and Rep. Sheila Jackson Lee). Appellant's efforts to point to other passages in the legislative history that are more supportive of his own position are unavailing because that language does not rise to the level of "clear" evidence. Therefore, since Appellant has failed to demonstrate that Congress intended for Article 117a to "occupy the field" for the nonconsensual broadcasting of consensual intimate images, I conclude that the preemption doctrine does not apply and Appellant's conviction under Article 134 should be upheld.[2]

Because, contrary to the majority, I would answer the granted issue in the negative and affirm the decision of the United States Coast Guard Court of Criminal Appeals, I respectfully dissent.

---

[2] In light of this determination, it is not necessary to examine the second prong of the test to determine whether the Article 134 specification was "composed of a residuum of elements" contained in Article 117a. *McGuinness*, 35 M.J. at 152 (citation omitted) (internal quotation marks omitted).